# BUFFALO SUPERIOR COURT.

## James F. Darnall agt. Homer A. Morehouse.

The extinguishment of one cause of action by the substitution of another of the same degree, can only be by way of *accord and satisfaction*, which cannot be implied by law, but is the effect of agreement between the parties.

When there is an engagement to *pay money* and the person to whom it is to be paid, either at the time the engagement is made, or subsequently, receives from him who has undertaken to pay to him the money, the check or note of a third person, such check or note is not a satisfaction of the engagement, unless it be so agreed.

When a bargain is struck for the sale of goods *for cash*, if the vendor, upon the delivery of the goods receives from the vendee, the check or note of a third person for the price, there is no presumption that such check or note was received in satisfaction of the price.

The *dicta* to the contrary in *Breed* agt. *Cook* (15 *J. R.*, 241); *Noel* agt. *Murray*, (13 *N. Y. R.*, 167), &c., commented on.

A sale is the transmutation of property for a pecuniary consideration.

Where A. agrees with B. to deliver to him certain goods for a certain note B. holds against a third person, and which B. does not undertake shall be paid, the contract is one of exchange.

The plaintiff at Buffalo sold to the defendant a drove of cattle at a certain price per pound *for cash.*

The cattle were weighed and delivered to the defendant, and the parties went to an office and the defendant procured a banker, there in good standing, to draw his sight draft for the amount, to the order of the plaintiff, upon a banking-house in New York City, and offered it to the plaintiff, who required the defendant to indorse it, which he did, and handed it to the plaintiff, who received it.

The banker failed, and his draft was dishonored, of which the defendant had due notice.

*Held* that there was no presumption of law that the banker's draft was received in payment.

*Held* also that the indorsement of the draft by the defendant was to give it credit with the plaintiff, and showed that plaintiff did not take it at his own risk.

The action was for cattle sold and delivered, and was tried in July, 1868, before Masten, J., who directed a verdict for the plaintiff, and ordered the defendants exceptions to be heard in the first instance at a general term.

William M. Johnson, on the part of the plaintiff, testified: I reside in Greencastle, Putnam County, Indiana; the plain-

tiff lives in Greencastle. In October last I came to Buffalo from Greencastle, in charge of some cattle; two loads, belonged to the plaintiff, and two car loads, belonged to Slith & Steel; they were put in the New York Central Railroad cattle yards at Buffalo. I met defendant, Morehouse, at those yards; I had not known him before; I sold the cattle to him at the yards on 28th October, 1867, between eight and nine, A. M. I did not understand where he resided; the plaintiff's cattle amounted to $2,826 30; Stith & Steele's to $2,100. Morehouse came to me and asked me where I was from, and I told him. He offered me for the cattle which belonged to the plaintiff $7\frac{1}{4}$ cents per pound, and for Stith & Steele's $6\frac{1}{4}$ cents per pound. I told him he might have them. The cattle were driven out and weighed; he said it was a little late, and he wanted to ship the cattle by the Erie Railroad, and he would settle with me after they were shipped; he shipped the cattle. He came to the office of the cattle yards about ten, A. M., or a little after. We ascertained the amount, and Morehouse stepped up to Burke, Shuttleworth's teller—he was busy; I told Morehouse I would like to go out on next Lake Shore train, and I had just about time to get to it; *he told Burke to fix me out;* that I wanted to go to the train. Burke began to make it all out in one draft; I concluded I had best have it made out in two drafts $2,100 in one, and the remainder in the other. I had not spoken to Burke about a draft when he commenced making out the one. Morehouse had not said any thing to me about a draft before that; the two drafts were filled out. When they were handed to me I handed them to Morehouse and told him he would have to indorse them; he wrote his name across the back and handed them to me.

I went directly to the cars and when I arrived in Greencastle, I went to the First National Bank there, and deposited the said draft for $2,826 30, to the credit of Darnall, the plaintiff.

The draft for plaintiff's cattle was read in evidence as follows:

$2,860 30. *Banking-House of*
H. T. SHUTTLEWORTH, Buffalo, N. Y.,
28th Oct.. 1867.

Pay this original draft, duplicate unpaid, to the order of of F. L. Burke, teller, twenty eight hundred twenty-six 30-100 dollars; value received.

JAS. M. BAKER, Cash.

To Messrs. Fisk & Hatch, bankers, New York.

Endorsed, *Pay W. Johnson or order*,
F. L. BURKE, Teller.

W. Johnson, H. A. Morehouse.

The plaintiff offered in evidence the certificate of a notary public, under his hand and seal, but without date, annexed to said draft, certifying that on the fourth day of November, 1867, he presented said draft at the office of Fisk & Hatch, New York, to a person in charge, and demanded payment thereof, which was refused. It was objected to,

1st. Because it bears no date.

2d. It does not state the giving of notice.

3d. It does not state to whom the draft was presented.

4th. There is no evidence that the person describing and signing himself as a notary, was one in fact.

The objections were overruled, the defendant excepted, and the certificate was read.

The plaintiff proved that the First National Bank, Greencastle, forwarded said draft on the day it was deposited, by mail to New York City for collection; that it was returned to said bank by due course of mail with the notarial certificate annexed to it. That the draft with the notarial certificate annexed to it was presented to the defendant and payment demanded sooner than due notice by mail could have reached him from Greencastle.

Homer A. Morehouse, the defendant, testified on his own behalf, as follows:

Darnell agt. Morehouse.

I bought the cattle of Johnson; I supposed he owned them; he did not say where he was from or where he was going, and I did not know; we weighed the cattle; I said, *I will take them to Erie pens and come back and pay you; I took them to the Erie Road and then went to the office, and I and Johnson figured up the amount; Burke asked him how he would have it;* he said he would have it in drafts to order of *W. Johnson,* one for $2,100, the other for the balance; Burke handed him the drafts, and he said to me, *I want you to put your name on them;* I did put my name on; *I gave to Burke a draft* on my partner in New York for the amount before I left the office.

I have dealt with Shuttleworth a year or more.

The defendant proved that the draft drawn by defendant on his partner was paid on presentation on the 30th, October, 1867. That at the time the drafts were delivered to Johnson, Shuttleworth was a banker in the city of Buffalo, in good credit; that James M. Baker was his cashier, and F. L. Burke his teller. That Fisk & Hatch paid all of Shuttleworth's drafts upon them, to the close of business on Saturday, November 2d 1867. That there were then to his credit with Fisk & Hatch, $20,000. That if said draft had been presented on or before Saturday it would have been paid. That on Monday, November 4th 1867, before the hour of business, Shuttleworth telegraphed them that he had failed, and to pay no more of his drafts, and that they paid none on the 4th of November nor since. That there are two mails from Buffalo to New York daily, one leaving at two P. M. and reaching New York next day at seven A. M., the other leaving Buffalo at six P. M. reaching New York the next day after business hours. The questions presented by the exceptions are stated in the opinion. The Lake Shore Rail Road runs west from Buffalo.

JOHN GANSON, *for plaintiff.*

Darnell agt. Morehouse.

I. There was not any evidence to submit to the jury tending to prove that the plaintiff's agent received the sight draft of Mr. Sh uttleworth in payment of the cattle.

The taking of the check, sight draft, or note of *a third person*, does not operate as a payment, unless it is *expressly* agreed to be received as such. The *onus* of proving such agreement is upon *the debtor*. (*Johnson* agt. *Weed*, 9 *John.*, 310; *Porter* agt. *Talcott*, 1 *Cow.*, 389; *Vail* agt. *Foster*, 4 *Com.*, 312; *Turner* agt. *The Bank of Fox Lake*, 2 *Transcript Appeals*, 344.)

The note of the debtor himself, or his check, is not a payment, even if expressly agreed to be received as such, unless it proves to be good. (*Cole* agt. *Sackett*, 1 *Hill.*, 516; *Waydell* agt. *Luer*, 5 *Hill.*, 448; *Elwood* agt. *Deifendorff*, 5 *Bar.*, 398.)

There was not any express agreement, one way or the other, proven on the trial.

II. The fact that the defendant, Morehouse, indorsed the sight draft, at the time he passed it to the agent of the plaintiff, on the requirement of the agent, repels any presumtion which might, otherwise, arise that the sight draft was taken in payment.

It not only repels any presumption of payment, but puts the case in precisely the same position as if Mr. Morehouse the debtor, had given his own check for the cattle.

The only thing that could discharge the defendant from liability to pay for the cattle, under the circumstances, of this case, was want of diligence in presenting the draft for payment.

III. The plaintiff used due diligence in presenting the draft for payment.

It was understood, as the jury have found, by the parties, that the draft was to be taken west. This being so, the evidence shows that due diligence was used.

IV. Judgment should be given in favor of the plaintiff, for the amount of the verdict.

NELSON SMITH and GEO. B. HIBBARD, *for defendant.*

I. It does not appear that the Shuttleworth draft was properly protested.   Without proper demand and notice of non-payment, this action cannot be sustained.   Nor can the plaintiff maintain this action, unless upon the trial the Shuttleworth draft was tendered to the defendant.

1. It was necessary for the plaintiff to cause the draft to be duly presented, and notice of its non-payment to be given, and tender it to the defendant on the trial.   Unless this was done he made the draft his own, and the whole transaction then (whatever may have been the effect of the previous acts of the parties), constituted a payment of the debt arising on the purchase of the cattle.   The burden is on the plaintiff to show that this was done.   *(Drayton* agt. *Trull,* 23 *Wend.,* 345; *Denniston* agt. *Inbrie,* 3 *Wash. C. C. R.,* 396; *Woodcock* agt. *Bennett,* 1 *Cow.,* 711; *Copper* agt. *Powell, Anthon's N. P.,* 68; *Shrimer* agt. *Ketter,* 25 *Pa.,* 61.)

2. No sufficient proof of the demand and notice of non-payment is given.

3. The notary's certificate is not sufficient to prove these facts, for the reasons stated at the time when objection was made to its introduction.   (1 *Parsons on notes and Bills,* 645.)

4. The draft was presented for payment, Monday, the fourth of November, 1867.   The defendant did not receive notice of the non-payment of the draft for many days afterwards, upon any showing.   He did not receive any formal notice of protest until long afterwards.

5. The draft was not tendered to the defendant on the trial.

II. The plaintiff was guilty of laches, in not causing the draft to be presented until after the failure of Shuttleworth, and therefore the defendant is discharged.   The doctrine is a familiar one.

Darnell agt. Morehouse.

1. The agent of the plaintiff received the draft on the twenty-eighth day of October, 1867. Shuttleworth's drafts were paid in New York to and including the second day of November, 1867—five days after the making of the draft. It could have been presented (and if presented would have been paid), three days before payment of Shuttleworth's drafts were stopped.

2. Such delay, as a matter of law, is unreasonable. Nor was there any evidence in the case tending to show any consent on the part of Morehouse that the draft should not be at once presented to the drawee. Johnson's testimony as to his residence in Greencastle, &c. does no touch that point.

3. The court therefore erred in submitting to the jury the question as to Morehouse's consent that the draft might be taken West. There was no evidence to be submitted to them on that point—no evidence tending to show an affirmative agreement that the draft might be taken West. The direction was otherwise improper. (*Sice* agt. *Cunningham*, 1 *Cowen*, 397.)

III. The court should have granted the defenant's motion for a dismissal of the complaint, made at the close of the plaintiff's case, and at the close of the proofs, on the ground that it appeared that the taking of the Shuttleworth draft was payment for the cattle.

1. The sale of the cattle was for cash, and there was no waiver of the condition to the passing of the tittle in the cattle, that the price should be first paid. The plaintiff could have maintained replevin for the cattle, at any time before the receipt of the draft by him. The doctrine is of course a familiar one. (2 *Kent's Com.*, 496, 497, *and cases.*)

Necessarily, therefore, the sale of the cattle and the taking the Shuttleworth draft were legally simultaneous transactions. The title in the cattle passed, and the draft was received at the same instant. The draft was not taken for a precedent debt.

2. Where a draft has been so taken, simultaneously with the passing of the title to the property, (in the absence of proof that it was not intended to be taken as payment), the legal presumption is, that it was taken in payment of the debt, and it will be so held. Such presumption applies, and (in the absence of fraud and misrepresentation, and in the absence of proof that the draft was not taken in payment), is conclusive in this case. (*Noel* agt. *Murray*, 13 *N. Y.*, 167; *Whitbeck* agt. *Van Ness*, 11 *J. R.*, 409.)

3. Nor does the fact that Morehouse individually indorsed the draft affect the question. The idea that when a party indorses paper so given, it may not be regarded as payment, is based upon the fact that the party is liable upon the paper indorsed. It is the same in principle as if the party had given his own note for the debt. Such is not this case, in fact or in principle.

*a.* The indorsment was by only one of the defendants. Certainly it cannot be claimed that, upon such an indorsement, the vendees of the cattle would be liable. Nor, upon authority, can action be maintained against them as vendees of the property, under such circumstances. (*Soffe* agt. *Gallagher*, 3 *E. D. Smith's R.*, 507; *Shrimer* agt. *Ketter*, 25 *Pa.*, 61; *Frisbie* agt. *Larned*, 21 *Wend.*, 450; *Waydell* agt. *Suer*, 3 *Denio*, 410; *Arnold* agt. *Camp*, 12 *J. R.* 409; *St. John* agt. *Purdy*, 1 *Sandford*, 9.)

*b.* But even the defendant, Morehouse, was not liable on the draft, and therefore the principle which prevents the transfer of the paper of a third party, upon the creation of a simultaneous debt—the principle that the debtor's substantial liability is preserved—does not apply to the case. (*See authorities last cited.*)

*c.* The defendant, Morehouse, would not have been liable on the draft, for the reason that the plaintiff was substantially its payee. The nominal payee was his agent, but he will be regarded, of course, the same as his principal. (*Lawrence* agt. *Shepard*, *Anthon's N. P.*; 281.)

Morehouse stood, therefore, in the position of second indorser of the draft.

*d.* Morehouse, therefore, could not be made liable on the draft. (*Ellis* agt. *Brown*, 6 *Barbour*, 282; *Waterbury* agt. *Sinclair*, 7 *Abbott*, 399.)

*e.* The consequence follows that the presumption of payment exists in this case the same as it would, had there been no indorsement of the draft, and this action cannot be sustained. (*See authorities above cited under this point.*)

IV. The court erred in not submitting to the jury the question whether or not the draft was really taken as payment, or intended to be payment at the time when the same was taken by the agent of the plaintiff. "There must always, or nearly always, be some evidence of this intent, (the intent with which paper is delivered), in the circumstances of the case, or in the conduct of the parties." (2 *Parsons on Notes and Bills*, 161, *and cases cited.*)

There is abundant evidence in this case—in the character of the trade—in the situation of Shuttleworth—in the ignorance of the plaintiff's agent of Morehouse's circumstances —in the absence of all inquiry as to the responsibility of the defendant—in the idea, upon the plaintiff's claim, that Morehouse was willing the draft should be taken west—in Morehouse's evidence as to the alternative offered the plaintiff's agent as to how he would have his pay, in currency or in draft— in the fact that Morehouse drew his sight draft on New York for the money for the cattle—in the whole aspect of the case—to have carried the case to the jury on the question of intent as to payment, and to have sustained their verdict that the draft was taken as payment for the cattle. There was much more evidence tending to show that the draft was, in fact, taken as payment, than there was to show an agreement that the draft might be taken west.

*By the court,* MASTEN, J.: This case is before us upon

exceptions taken by the defendant at the trial, and directed to be heard in the first instance at a general term.

The certificate of a notary public was offered in evidence to show that payment of the bill drawn by Shuttleworth upon Fisk & Hatch attached to it, had been demanded and refused. At commn law, the bill being inland, the notarial certificate was not evidence, but by the statute is made evidence of the facts stated in it.

Its admission was objected to on the ground stated in the case, which, to my mind, are too clearly untenable to admit of discussion.

The exceptions, also, present the following questions :

1. Was the receiving by Johnson, under the circumstances, of Shuttleworth's bill upon Fisk & Hatch, an actual satisfaction or payment of the price for which the cattle were sold to the defendant ?

There is no evidence of an express agreement that it should be payment.

The extinguishment of one cause of action by the substitution of another, of the same degree, can at the common law, only be by way of accord and satisfaction, which cannot be implied by law, but is the effect of an agreement between the parties. (3 *American Leading cases*, 162–196.

By the civil law novation can only be established by an express declaration to that effect by the creditor, or by acts which are tantamount to such declaration; and the delegation, by which the debtor gives to the creditor another debtor, is not a novation, unless there be an express declaration to that effect, or what is tantamount to it.

And hence it is has been repeatedly ruled in this state, and is settled law, that if a creditor receives from his debtor, the check, note, or bill of a third person, upon a pre-existing debt, the presumption is, that it was received as additional security, and not as an accord and satisfaction.

The learned counsel for the defendant contends that if, at the time of sale, the seller receives from the purchaser the

Darnell agt. Morehouse.

note or bill of a third person for the price, the presumption of law is that it is received in absolute payment.

There are *dicta* to that effect, but I know of no case in which the question being directly up, was so decided.

In all the cases I have seen in which it was held that the vendee was not liable for the price of the goods by reason of the vendor having received the note or bill of a third person at the time of the sale, the decision is put upon the agreement of the parties, either express or found as the result of a mutual understanding, or meeting of the minds of of the parties, in contra distinction to an agreement implied by law.

In some of the cases, the question was whether there was ever any debt or obligation on the part of the vendee ; and in others, whether there was an accord and satisfaction.

A sale is the transmutation of property for a pecuniary consideration. (*Williamson* agt. *Barry,* 8 *How. U. S. R.,* 544.)

Where A sells certain goods to B, for a note which B holds against a third person, and delivers it to A, and for the payment of which note B does not undertake to be responsible, B is not, in any event, under any liability to A for the price of the goods. It is an exchange of the goods for the note, and is in legal effect as though one chattel had been exchanged for another.

Of such a transaction it is not accurate to say that the note was received in or as payment, no more than it would be in a horse trade to say that the one horse was received in payment for the other.

I think it may be laid down upon principle, that whenever there is an engagement to pay money, and the person to whom it is to be paid receives from him who has undertaken to pay it, his note or bill, or that of a third person, by which it is expected that the money will be received by him who is entitled to it, such note or bill is not a satisfaction of the engagement to pay, unless it be agreed that such

shall be its effect, the *onus* of showing which rests upon the debtor.

And this is the case, whether the obligation to pay money is a precedent one, or is created simultaneously with the receipt of the note or bill.

The fact being ascertained, or conceded that there was an undertaking on the part of him who delivered the note or bill, to pay money to him who received it, the taking of the note or bill is not a satisfaction of the undertaking, or an extinguishment of the cause of action, as has already been stated, unless there be an accord.

"When the terms of sale are agreed on and the bargain is struck, the contract of sale becomes absolute as between the parties, without actual payment or delivery." (2 *Kent Com.*, 492.)

The price is an essential ingredient in a contract of sale, and there is an undertaking on the part of the buyer to pay it to the seller; and when the terms are cash down, the seller, being ready to deliver the goods sold, can immediately maintain an action against the buyer for the price.

Now, when the terms of sale are agreed on by the parties, and the bargain is struck, and the contract of sale has become absolute between the parties, and the price is to be paid down in cash, and the seller delivers the goods sold to the buyer, who, at the close, instead of the money, delivers to the vendor the check of a third person on a bank, payable presently, which is duly presented for payment and is dishonored, and the buyer notified, is there any presumption of reason, and therefore of law, that the check was received in absolute payment of the price and in discharge of the buyer?

I think it follows from what I have said, that there is no such presumption.

The same result would follow, if, instead of a check payable presently, it was a time note or bill, except that in such

case, the debt would be suspended until the note or bill matured.

*The Bank of England* agt. *Newman*, (1 *Ld. Raymond R.*, 442), was a sale of notes. HOLT, Chief Justice, said, "This is a plain sale of the bill without indorsement." *Fydell* agt. *Clark*, (1 *Esp. Cases*, 447), was the same. *Ward* agt. *Evans*, (2 *Ld· Raymond R.*, 928), was the case of a pre-existing debt. In delivering his opinion Chief Justice HOLT said, "I agree with my brother, Darnall, (the plaintiff's counsel), that taking a note for goods sold is a payment because it was part of the original contract."

The case did not call for the remark. *Clark* agt. *Mundal*, (1 *Salkeld R.*, 124), was also the case of a precedent debt. HOLT, Chief Justice, said, "If A sells goods to B, and B *is to give a bill in satisfaction*, B is discharged though the bill is never paid, for the bill is payment."

In *Johnson* agt. *Weed*, (9 *Johnson R.*, 310), there was a contrariety in the evidence.

The defendant's proof went to show that it was part of the bargain that Townsend's note should be taken in payment of the goods; whilst the evidence of the plaintiff showed that they were to be *paid for in cash;* and that when Townsend's note *made payable to the plaintiff* was produced, the plaintiff observed that the note ought to have been made payable to and indorsed by the defendants, to which one of the defendants replied, *that it would make no difference.*

The plaintiff then took the note and gave defendants a bill of the goods and a receipt in full at the bottom.

Chief Justice KENT charged the jury, that unless the plaintiff agreed to receive the note as payment and to run the risk of its being paid, the mere taking of the note would not amount to a payment. The jury found for the plaintiff and a new trial was denied. *Whitbeck* agt. *Van Ness*, (11 *John. R.*, 409), was for the price of a horse. The case was not disposed of upon any legal presumption, but upon the agreement in fact between the parties. SPENCER, J., in de-

livering the opinion of the court said, "The single point for
our determination in this case is whether the note of a third
person *agreed* to be taken in payment for goods sold at the
same time is taken at the risk of the vendor of the goods, or
of the vendee.* * * *

Nothing can be more manifest than that both parties per-
fectly understood that the plaintiff should take Deane's note
at his own hazard.* * * *    The intrinsic circumstances of
this case plainly show that the plaintiff considered himself
as taking Deane's note at his own risk.    It was made paya-
ble to the plaintiff himself, and the defendant by not indors-
ing it or guaranteeing the payment of it, clearly declined
pledging his own responsibility.    The offer was made by the
defendant of Deane's note for the horse; the plaintiff took
time to consider whether it was advisable to take Deane's
note, and after deliberation and we must presume, too, after
inquiry, agreed to sell the horse for the note.* * * * To my
mind the nature and proof of the transaction furnish as de-
cisive proof that the plaintiff was to take the note at his
own peril as if it had been stipulated in express terms."

*Breed* agt. *Cook*, (15 *John. R.*, 241), was for the price of
a horse, and arose in a justice's court.    The case states that
the price of the horse was $65, in *part payment* of which the
defendant gave to the plaintiff the note of one Fillmore for
$23.    That it was *proved* by the defendant that at the time
of the sale of the horse, the plaintiff requested him to indorse
the note; this he refused to do, and stated that the maker
of the note was as well known to the plaintiff as to him;
that the plaintiff, after inquiring into the solvency of the
maker, finally agreed to take the note without indorsement.
The justice decided, that the plaintiff, not having made any
*special contract* to take the note at his own risk, the defend-
ant was liable.

*Per Curiam.*    "The justice erred, admitting the rule of
law to be as he apprehended, yet he clearly mis-applied it;
*for the evidence showed satisfactorily that the vendors agreed*

*to take the note at their own risk.* The decision in *Whitbeck* agt. *Van Ness*, (11 *John. R.*, 409), gives the true rule on this point, which is, that if the vendor of goods receive from the purchaser the note of a third person at the time of the sale, it is deemed to have been accepted by the vendor in payment and satisfaction unless the contrary be expressly proved."

Now it is quite plain, that the enunciation of the rule, supposed to have been laid down in *Whitbeck* agt. *Van Ness* was not necessary to the decision of the case before the court.

Upon examination of *Whitkeck* agt. *Van Ness*, is is equally plain that no such rule was laid down in that case as stated. In delivering the opinion in *Johnson* agt. *Weed*, *supra*, it was said that, "there must be a clear and *special* agreement that the vendor shall take the paper absolutely as payment, or it will be no payment."

It would seem that the justice of the peace in *Breed* agt. *Cook*, put his decision upon this remark.

In *Whitbeck* agt. *Van Ness*, SPENCER, J., in the course of his opinion, said, "I am compelled to say, that although I assented to the decision in *Johnson* agt. *Weed*, and yet believe it to be correct, the reasoning of the judge, who gave the opinion, went further than I intended; and, as I understand those of my brethren who assented to the decision, further than they meant to go." The learned judge then goes on to show that a *special*, express agreement is not necessary, but that from the nature of the transaction and the proofs, it may be found, as a fact, that such was the mutual understanding of the parties.

From the facts in *Whitbeck* agt. *Van Ness*, as, by the statement of Judge SPENCER which I have given, they appear to have been understood by the court, it would seem that the case was not strictly one of sale, but of exchange.

It is possible that the *dicta*, that if, at the time of the sale the seller receives from the buyer, the note, or bill, or

check of a third person for the price, there is a presumption of law that it was taken in absolute payment and at the risk of the seller, may have their origin in the cases I have cited.

It is claimed that in *Rew* agt. *Barber* (3 *Cowens, R.*, 272), this *dictum* became a decision. But this is not so. The action was to recover back the price paid by the plaintiff to the defendant on the purchase of a horse, the title of which had failed. It came before court on a special verdict by which it was found that the plaintiff *paid* the defendant for the horse in a note against a third person, and the question was, whether proof of such payment, sustained the common *money* counts.

The case of *Noel* agt. *Murray* was for the price of some looking-glass plates; it originated in the superior court of New York.

Upon the trial it appeared that at the time of the sale and delivery of the plates, the defendant delivered to the plaintiff the note of a third person on time, and paid the balance of the price in money; and the plaintiff gave to the defendant a receipt in full for the plates.

There was also other evidence tending to show that the note was received in payment and at the risk of the plaintiff. There was a verdict for the defendant.

The case was taken to the general term of that court, where it was held that the evidence proved that it was the understanding of the parties that the note should be received by the plaintiff in payment for the plates and at his own risk.

The decision was not placed upon any presumption of law, but upon established facts. ( 1 *Duer R.*, 385.)

Upon appeal to the court of appeals the judgment was affirmed. (13 *N. Y. R.*, 167.)

The case came before the court upon an exception to the refusal of the judge to decide as matter of law that there was no payment, and on an exception to his charge, which

was that if, *from the evidence,* the jury found that it was part of the *agreement* between the parties at the time of the sale and delivery of the plates, that the note should be received in payment, they should find for the defendant. It does not appear that any thing was said in the charge about presumptions. Opinions were delivered by Judges MARVIN and DEAN. In the course of his opinion Judge MARVIN indulges in the *dictum* under consideration, and cites the cases upon which I have commented. But the decision of the case is put by both of the judges upon the ground that there was sufficient evidence of an agreement, in fact that the note was received in payment and at the risk of the plaintiff, to carry the case to the jury. Indeed that was the only question presented by the bill of exceptions for the judgment of the court.

The case leaves the *dictum,* still an *obiter dictum.*

In the case before us the terms of the sale of cattle were agreed on, the bargain struck and the cattle delivered.

The sale was for cash. While it is true that if the defendant had refused to pay for the cattle, the plaintiff might have retaken possession of them, yet the plaintiff had the election in such case not to retake them. The statute of frauds was satisfied, and the plaintiff could have brought action against the purchaser for the price.

There was then, a debt or liability on the part of the defendant for the price.

All that remained to be done to close up the matter, was the payment of the price. If, when the parties met a couple of hours after for that purpose, the defendant had handed to the plaintiff's agent the Shuttleworth draft, and he had received it without a word being said as to whether or not it should be accepted as actual payment, I maintain upon principle it would not have been a payment.

Again, in the case before us the plaintiff's agent refused to receive the Shuttleworth draft or bill, unless the defendant would indorse it, and the defendant thereupon indorsed it.

The question before us, is not in what form the defendant would be liable if there was in fact an agreement that the draft should be absolute payment; but whether there was such an agreement or sufficient evidence thereof, to carry the question to the jury.

Reason and authority I think, justify us, even if there is such a presumption as that contended for by the defendant, in saying, that where the liability of the buyer is continued in any form, that fact rebuts the presumption, and shows that the note was not taken at the risk of the vendor and in absolute payment.

In *Butler* agt. *Haight*, (8 *Wend. R.*, 535), the buyer of goods at the time of the sale gave to the seller the note of a third person for the price and guaranteed its payment, and the seller gave to the buyer a bill of the goods, signed by the seller in which he acknowledged that the note was turned out to him *in payment* for the goods.

It was held that the guarantee was conclusive evidence, that the note was not taken in payment, and that the plaintiff could recover for goods sold and delivered.

In *Monroe* agt. *Hoff*, (5 *Denio R.*, 360), the defendant applied to the plaintiff to sell him some goods, and offered the plaintiff the note of a third person upon which the defendant indorsed a guarantee of collection; the plaintiff received the note and delivered goods to the defendant to the amount of it; the guarantee was void under the statute, because it did not express the consideration. It was held that the guarantee, though void, afforded evidence that the transaction was a sale, and that the note was not taken in payment, and that the plaintiff could recover for goods sold the defendant.

Reference is also made to the following cases: (*Forden* agt. *Jones*, 2 *E. D. Smith R.*, 106; *Soffe* agt. *Gallagher*, 3 *E. D. Smith R.*, 507; *Whitney* agt. *Goin*, 20 *N. Hampshire*, 354; *Gardner* agt, *Gorham*, 1 *Doug.*, (*Mich.*) *R.*, 507; *Dodge* agt. *Stanton,* 12 *Mich.*, 408; 2 *American Leading cases*, 187; *Camidge* agt. *Allenby* (6 *B. and C.* 373) 15 *E. C. L.*, 201.)

Darnall agt. Morehouse.

The bill of Shuttleworth upon Fisk & Hatch, was drawn to the order of Shuttleworth's teller, and was by him indorsed to the order of Johnson, the plaintiff's agent. It is contended for that reason, that the defendant did not continue his liability to the plaintiff.

The position is not sound.

It is very evident that Johnson required the defendant to indorse the bill and that the defendant did indorse it to give the bill credit with Johnson.

The defendant therefore, by his indorsement of the bill, made himself liable to the plaintiff as indorser of the bill (*Moore* agt. *Cross*, 19 *N. Y. R.*, 227.)

2. Was there error in the refusal to submit it to the jury to say whether Shuttleworth's bill or draft was taken in payment for the cattle?

With the conceded fact, that Johnson required the defendant to indorse the draft, and that the defendant did thereupon indorse it, there was nothing for the jury. They could have given to that question but one answer that would have been allowed to stand. There was nothing in the circumstances or in the conduct of the parties that would authorize but the one conclusion.

Indeed, if the defendant had not indorsed the draft, and nothing had been said about his indorsing it, there would have been nothing for the jury. The defense of payment rests upon a presumption of law claimed to exist, which it has been shown does not exist.

The only testimony that could carry the question to the jury, is the testimony of the defendant, that "Burke, the teller, asked Johnson how he would have it; he (Johnson) said he would have it in drafts to order of W. Johnson, one for $2,100, the other for the balance. Burke handed him the drafts; Johnson said to me, I want you to put your name on them; I did put my name on." It is contended that the meaning of this question was, whether he (Johnson) would have it in money or in drafts.

In the connection in which the defendant states this inquiry by Burke, the meaning contended for, can only be given to it, upon the assumption that Burke proceeded to pay Johnson for the cattle, without any request or suggestion from either Johnson or the defendant.

When considered in connection with the statement of Johnson on the witness stand, that the defendant spoke to Burke, who began to make out a draft, and which the defendant, when he took the stand, did not deny, it is evident that the meaning of the question was, how will you have the draft.

From the facts disclosed in the case, I think Burke must be regarded as between Johnson and the defendant, as having acted upon that occasion for the defendant.

3. Was the plaintiff guilty of laches in presenting the bill or draft for payment?

This turns entirely upon the fact, whether the defendant consented that Johnson, the plaintiff's agent, might take the draft home with him to Greencastle.

Upon this question of fact, there was some conflict in the evidence, and the jury to whom it was submitted, found that such consent was given.

It was contended upon the argument, that there was no evidence to justify the submission of the question to the jury.

A perusal of the case satisfies me that there was, and brings my mind to the conclusion at which the jury arrived.

It was also contended on the argument, that there were laches in giving notice to the defendant of the dishonor of the bill.

There is no exception presenting the question. But there were no laches in that respect.

The case shows that the bill, with the notarial certificate attached to it, was presented to the defendant and payment demanded, before notice of its dishonor could have reached him by due course of mail.

It was also contended on the argument, that the bill should have been surrendered up to the defendant.

The case shows it was read in evidence, but does not show that it was not surrendered up.

There is no exception presenting the point, and the case is before us on the exceptions taken at the trial.

The remaining exceptions present the question, whether there was error in the refusal to submit it to the jury to say, whether the bill drawn by the defendant upon his partner, Miller, and delivered to Shuttleworth, was payment for the cattle.

There is no evidence calling for, or justifying its submission. Indeed, it was not urged on the argument.

There must be judgment for the plaintiff on the verdict.